**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION**

| | |
|---|---|
| LANCE WRIGHT AND SHAUNI WRIGHT, for themselves, as private attorneys general, and on behalf of all others similarly situated,<br><br><br><br>Plaintiffs,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC<br><br><br><br>Defendant. | Case No. 5:24-CV-237-KDB-DCK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE UNLAWFUL TRADE PRACTICES ACT, ORS 646.605 *et seq.***<br><br><br>JURY TRIAL DEMANDED |

Plaintiffs Lance Wright and Shauni Wright, individually, as private attorneys general, and on behalf of all others similarly situated, allege as follows, on personal knowledge and the investigation of their counsel, against Defendant Lowe's Home Centers, LLC ( "Lowe's" or "Defendant"):

## I.    INTRODUCTION AND SUMMARY

1.      Lowe's represents itself as a home improvement retailer. Lowe's operates Lowe's retail stores and its website, lowes.com, where it advertises, markets, and sells a wide variety of home-related goods throughout Oregon and the United States. This lawsuit concerns only

particular products sold by Lowe's that it advertises with false discounts—specifically (1) Bali and Levolor branded blinds and shades; and (2) major appliances, e.g., refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers (collectively, the "Products").

2.      For years, Lowe's has engaged in a massive and consistent false discount advertising scheme both in its retail stores and on its website by advertising perpetual discounts on the Products. These discounts are taken from Lowe's' advertised strikethrough reference prices for the Products. Lowe's represents these reference prices to be Lowe's' regular and normal prices of the Products," from which the advertised discounts are calculated.

3.      Lowe's prefaces the reference prices with the word "Was" (e.g., "WAS ~~$1,899.99~~") to further indicate that the higher reference price was Lowe's' previous and regular selling price for the Product.

4.      Lowe's' advertised discounts and reference prices are false because Lowe's advertises perpetual discounts off the Products, and thus rarely if ever offers the Products at their advertised reference price.

5.      Lowe's also advertises false limited-time discounts for the Products (e.g., "Valid thru: 09/25/2024" or "Ends Sept 25") to induce consumers to purchase the Products immediately before they supposedly return to the (fictitious) reference price. In reality the discounts never end and they continue perpetually past the false "Valid thru" or "Ends" date.

6.      Lowe's' deceptive pricing scheme is intended to trick consumers into believing that its Products are worth, and have a market value equal to, the inflated reference price, and that the lower advertised sale price represents a special bargain. Lowe's perpetrates this illegal scheme in order to induce consumers to purchase the Products and to charge more for the Products than it otherwise could have charged.

7.      Lowe's' false discount advertising harms consumers like Plaintiffs by causing them to pay more than they otherwise would have paid and to buy products that they otherwise would not have bought. *See Clark v. Eddie Bauer LLC*, 371 Or. 177, 198–99, 532 P.3d 880, 893

(2023) ("[W]hen a person acts in response to the deception by spending money that the person would not otherwise have spent, the person has been injured to the extent of the purchase price as a result of that deception."). Customers do not enjoy the actual discounts Lowe's promises them, and the Products are not in fact worth the amount that Lowe's represents to them. Lowe's' deceptive pricing scheme also artificially increases the demand for the Products and causes all customers, including Plaintiffs and Class members, to pay price premiums to Lowe's.

8.      Lowe's' false discount advertising violates the Oregon Unlawful Trade Practices Act (UTPA), ORS 646.605 *et seq*., in numerous ways, as detailed in this Complaint.

9.      Plaintiffs bring this lawsuit individually and on behalf of a class of Oregon consumers who purchased from Lowe's one or more Products advertised with a discount. Plaintiffs seek, for themselves and for each of the Oregon class members, statutory damages of $200 or actual damages, whichever is greater. Additionally, Plaintiffs, acting as private attorneys general, seek public injunctive relief to protect the general public of Oregonians by enjoining Lowe's from engaging in the unlawful false advertising scheme alleged herein.

## II.    **THE PARTIES**

10.     Plaintiffs Lance Wright and Shauni Wright are married and are both citizens and residents of the city of Coos Bay, in Coos County, Oregon.

11.     Defendant Lowe's Home Centers, LLC is a limited liability company incorporated in North Carolina with its principal place of business at 1000 Lowes Blvd, Mooresville, North Carolina, 28117. Lowe's Home Centers, LLC owns and operates over 2,000 Lowe's brick-and-mortar retail stores throughout the United States, including 14 in Oregon. Lowe's Home Centers, LLC also owns and operates the Lowe's website, lowes.com.

## III.   **JURISDICTION AND VENUE**

12.     **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from Lowe's.

13. **Personal Jurisdiction.** This Court has personal jurisdiction over Lowe's because, without limitation: (1) Lowe's is headquartered in this District; (2) Lowe's is incorporated in North Carolina; and (3) Lowe's is authorized to do business and regularly conducts business in this District.

14. **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because Lowe's is headquartered in this District, and the claims alleged herein are based on decisions and actions by Lowe's which took place in this District.

## IV.     LOWE'S' FALSE DISCOUNT ADVERTISING SCHEME

15.     Lowe's operates Lowe's retail stores and its website, Lowes.com, where it advertises, markets, and sells a wide variety of home-related goods throughout Oregon and the United States. Lowe's sells Products from national brands, as well as exclusive Products that are only available from Lowe's.

16.     For years, Lowe's has engaged in a massive and consistent false discount advertising scheme in its retail stores and on its website concerning the Products. Specifically, Lowe's advertises perpetual discounts on the Products. These discounts are taken from Lowe's advertised strikethrough ticketed reference prices for the Products, which are presented as Lowe's own regular selling prices for the Products. However, unbeknownst to its customers, Lowe's discounts are never-ending, and the Products are never or almost never offered at the supposed regular price. Lowe's perpetrates this illegal scheme in order to induce consumers to purchase the Products and to increase the amount it can charge for the Products.

17.     Lowe's advertises discounts on its Products on the in-store price placards affixed to the Products, and on its website product list pages and individual product pages. Lowe's typically advertises the discounts by advertising a lower discounted price, next to a purported strikethrough regular price (the "reference price"). Lowe's prefaces the reference prices with the word "Was" (e.g., "WAS $1,899.99") to further indicate that the reference price was Lowe's previous and regular selling price for the Product. Lowe's also advertises a "SAVE $xxx" dollar amount beside the discounted selling price. Additionally, Lowe's advertises false limited-time

discounts for the Products (e.g., "Valid thru: 09/25/2024 or "Ends Sept 25") to induce consumers to purchase the Products immediately before they supposedly return to the (fictitious) reference price.

18.     Examples of Lowe's' false discount advertising scheme, both in-store and online, are provided below.

19.     **Bali and Levolor Shades and Blinds.** For example, Lowe's advertised a supposedly limited time sale of 35% off of Bali shades and 20% off Bali blinds for the period September 12, 2024 through October 2, 2024, both in-store and online. See the photo and screenshot below at **Figure 1**.

**Figure 1:** **Limited-Time "Sale" of Bali Shades & Blinds From 9/12/24 – 10/2/24**

**Lowe's Retail Store**
(Photo taken 9/26/2024)

**Lowe's Website**
(Screenshot taken 9/26/2024)




20. However, this sale and the advertised discounts were fictitious; in fact Lowe's nearly always offered the Bali blinds and shades for <u>at least</u> 20% to 35% off, such that the discount was not the advertised "Special Value" at all.

21. For instance, as the photo above shows, Lowe's advertised that the Bali sale ended on October 2, 2024. Yet starting October 3, 2024, Lowe's replaced the 20% to 35% off Bali "sale" with a new (and bigger) 30% to 50% off Bali "sale." See the photo and screenshot below at **Figure 2**.

- 6 -

**Figure 2:  Bali "Sale" Ending 10/2/2024 Replaced With Bigger "Sale" Ending 10/16/2024**
(20–35% Off sale replaced with 30–50% Off sale on 10/3/24)

**Lowe's Retail Store Signage**
(Photo taken 10/9/2024)

**Lowe's Website**
(Screenshot taken 10/9/2024)





22. And then, when this next 30%–50% off sale on Bali Blinds and Shades expired on October 16, 2024, Lowe's simply extended the sale, with a new end date of October 30, 2024.

23. Thus, a Lowe's customer who was induced to purchase Bali shades on September 26, 2024, because he or she did not want to miss out on the supposedly limited time 35% off sale, actually <u>paid more</u> than the customer would have paid if he or she had waited until the sale was supposedly over. The customer could have waited a week and gotten 50% off the reference price (instead of only 35% off) of the shades if the customer had not been tricked by Lowe's. Meanwhile, in all instances, the amount of the advertised discount was false because Lowe's <u>never</u> sold the shades at the advertised reference price.

24. Lowe's advertises perpetual sales for all of its Bali and Levolor branded blinds, typically between 20% to 50% off. Below at **Figure 3** is a table showing how Lowe's advertised back-to-back sales events for Bali and Levolor blinds and shades for over a month straight, from July 31, 2022, to September 14, 2022. The table is followed by screenshots of Lowe's' website

demonstrating the sales. Consistent with Lowe's' standard practice and policy, when one "sale" expired it was either extended or another similar sale immediately took its place.

**Figure 3:  Table Showing Perpetual Sales of Bali and Levolor Blinds**

| "Limited Time" Sale Period | Advertised Sale Event Discount |
|---|---|
| 7/31/22 – 8/10/22 | Up to 30% Off Bali and Levolor blinds and shades |
| 8/11/22 – 8/24/22 | Up to 35% Off Bali and Levolor blinds and shades |
| 8/25/22 – 9/07/22 | 40% Off Levolor blinds and shades |
| 8/25/22 – 9/14/22 | Up to 30% Off Bali blinds and shades |

25.     Below are Lowe's website screenshots corresponding to the continuous sale events in the table above (red boxes added).

**Advertised Limited-Time Sale of Bali & Levolor Products Ending 8/10/2022**
(Screenshot taken 7/31/2022)



**Sale Ending 8/10/2022 Replaced with Bigger "Sale" Ending 8/24/2022**
(Screenshot taken 8/11/2022)



**Sale Ending 8/24/2022 Replaced With Sales Ending 9/7/2022 & 9/14/2022**
(Screenshot taken 8/25/2022)



26.     Lowe's advertises the perpetual discounts and "savings" on the blinds and shades category webpages as shown above, and also on the product list pages and the individual product pages as shown below. On its product list pages and on the individual product pages, Lowe's advertises the purported regular price with a strikethrough (e.g., $138.27), and displays a specific dollar amount of promised savings in green text (e.g., "Save $41.48"). The "savings" is calculated by applying the advertised percentage off sale (e.g., the 30% Off Bali Blinds and Shades shown in the screenshot above) to the strikethrough regular price.

**Product List Page Displaying Discounted Bali Blinds & Shades – 9/12/2024**



**Product List Page Displaying Discounted Levolor Blinds & Shades – 9/12/2024**

27.     In the online shopping cart, Lowe's advertises the strikethrough regular price, the dollar amount "savings," and the bogus sale "Ends" date. Lowe's also prefaces the strikethrough price with the word "Was" (e.g., "Was $307.84"), to further indicate that the higher strikethrough price was Lowe's' previous and usual selling price for the Product. See the screenshots below.

**Lowe's Online Shopping Cart – 9/17/2024**





Zoom In of Pricing and Discount Representations (Including "Was" Price)

28.     However, all of these sale advertisements and promises of savings for the Bali and Levolor blinds and shades (the "Products") were false. Lowe's never previously offered or sold the Products at the advertised strikethrough reference price (i.e., the "Was" price). Likewise, Lowe's' advertisements that the discounts were for a limited time, and that they would end on a

certain date, were false, because the Products were in fact perpetually on sale and Lowe's never offered the Products at the full price.

29. **Major Appliances.** Lowe's similarly advertises perpetual "sales" on major appliances such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers (also, the "Products").

30. Lowe's typically advertises discounts on its major appliances by advertising (on the in-store price placards affixed to the Products, and on its website product pages) a lower discounted price, next to a purported regular price with a strikethrough (the "reference price"). Lowe's also advertises a "SAVE $xx" dollar amount beside the supposedly discounted selling price. In its retail stores, Lowe's also prefaces the strikethrough price with the word "WAS" (e.g., "WAS $1499"), to further indicate that the higher strikethrough price was Lowe's previous and usual selling price for the product. Likewise, on its website, Lowe's describes the reference price as the "Was" price in in the online shopping cart.

31. The individual appliance advertisements also typically state or indicate that they are for a limited time. On the price placards that Lowe's affixes to the appliances in its retail stores, Lowe's states the discounted price is "Valid thru mm/dd/yyyy" (e.g., "Valid thru 9/24/2024"). On its website, Lowe's similarly states the discounted price for the appliance "Ends mm dd" (e.g., "Ends Sep 24"). Lowe's advertises that its discounts are for a limited time, with a certain end date, in order to induce its customers to purchase the appliances immediately so that they do not miss out on the supposed "sale."

32. Below at **Figure 4** are examples of Lowe's' discount advertising for major appliances both in-store and online, which demonstrate Lowe's' advertising of reference prices, sale prices, dollar savings, and sale end dates. The top image is a photo taken in a Lowe's store on September 26, 2024, of an in-store price placard for an LG Dishwasher. The bottom image is a screenshot of the Lowe's website product page for that same LG Dishwasher taken on that same day.

- 12 -

**Figure 4:** **Advertisements for LG 24-in Front Control Built-In Dishwasher** (Item No. 5686041)

**Lowe's Retail Store**
**(9/26/2024)**



**Lowe's Website**
**(9/26/2024)**



33. However, these sale advertisements were false. In fact, pricing data collected by Plaintiffs' counsel shows that Lowe's <u>never</u> previously sold the LG dishwasher at the advertised "WAS" reference price of $829.00. Lowe's <u>always</u> offered and sold the dishwasher at a much lower price, typically between $449.00 and $549.00. And Lowe's' statement that the discounted price was for a limited time ending on October 2, 2024, was also false. For example, starting on October 3, 2024 (the day after the sale purportedly ended), Lowe's continued advertising the LG dishwasher at the same $499.00 discounted price, but now advertised a sale end date of October 16, 2024.

34. Below at **Figure 5** is a historical price table showing how Lowe's advertised back-to-back sale periods for this same LG dishwasher (Item No. 5686041) in months prior. Consistent with Lowe's' standard practice and policy, when one "sale" expired it was either extended or another similar sale immediately took its place.



**Figure 5:  Table Showing Perpetual "Discounts" on LG Dishwasher**
 (Item No. 5686041)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 4/25/24 – 5/01/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 5/02/24 – 5/08/24 | ~~$829.00~~ | $549.00 | "Save $280.00" |
| 5/09/24 – 5/15/24 | ~~$829.00~~ | $549.00 | "Save $280.00" |
| 5/16/24 – 5/22/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 5/23/24 – 5/29/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 5/30/24 – 6/05/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 6/06/24 – 6/19/24 | ~~$829.00~~ | $549.00 | "Save $280.00" |
| 6/20/24 – 6/22/24 | ~~$829.00~~ | $449.00 | "Save $380.00" |
| 6/23/24 – 7/17/24 | ~~$829.00~~ | $509.00 | "Save $320.00" |

35. Lowe's' advertised sales and discounts for the LG Dishwasher were false. Likewise, the advertised limited-time nature of the sales (e.g., the "Valid thru" dates and sale

- 14 -

"Ends" dates) were false. Lowe's always offered the dishwasher for hundreds of dollars less than the supposed "WAS" strikethrough price.

36.     Lowe's false discount advertising for the LG Dishwasher is typical and representative of the false discount advertising Lowe's perpetrates for all of its "discounted" major appliances.

37.     For example, below at **Figure 6** is an in-store photo taken on September 24, 2024, of the price placard for a Whirlpool Electric Range (Item No. 803967), which was similarly advertised with false discounts and false limited-time sale advertising.

**Figure 6:   In-Store Advertisement for Whirlpool Electric Double-Oven Range** (Item No. 803967)



**Lowe's Retail Store**
**(9/24/2024)**

38.     However, these discount advertisements were false. In fact, pricing data collected by Plaintiffs' counsel shows that Lowe's <u>never</u> previously sold the Whirlpool Electric Range at

- 15 -

the advertised "WAS" reference price of $1899.00. Lowe's <u>always</u> offered and sold the dishwasher at a much lower price, typically between $1199.00 and $1599.00. And Lowe's' statement that the discounted price was for a limited time ending on October 2, 2024, was also false. Lowe's has continued to perpetually advertise the electric range at a similar discount with continually extended "Valid thru" dates, through the date of this Complaint. Below at **Figure 7** is a historical price table showing how Lowe's advertised back-to-back sale periods for this same Whirlpool Electric Range (Item No. 803967) in months prior. Consistent with Lowe's standard practice and policy, when one "sale" expired it was either extended or another similar sale immediately took its place.

39.     Below at **Figure 7** is a historical price table showing how Lowe's advertised back-to-back sale periods for this same Whirlpool Electric Range (Item No. 803967) in months prior. Consistent with Lowe's' standard practice and policy, when one "sale" expired it was either extended or another similar sale immediately took its place.

 **Figure 7:  Perpetual "Discounts" on Whirlpool Electric Double-Oven Range** (Item No. 803967)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$1,899.00~~ | $1,299.00 | "Save $600.00" |
| 4/25/24 – 5/01/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/02/24 – 5/08/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/09/24 – 5/15/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/16/24 – 5/22/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/23/24 – 5/29/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/30/24 – 6/05/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 6/06/24 – 7/10/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 7/11/24 – 7/21/24 | ~~$1,899.00~~ | $1,599.00 | "Save $300.00" |

40.     Lowe's' false discount advertising for the LG Dishwasher and the Whirlpool Electric Range described above is typical and representative of the false discount advertising

- 16 -

Lowe's perpetrates for all of its "discounted" major appliances. Below at **Figure 8** through **Figure 10** are historical price tables demonstrating similar perpetual false discounting by Lowe's for other types of major appliances such as refrigerators, washer/dryers, and microwaves.

**Figure 8:  Perpetual "Discounts" on Frigidaire 18.3-cu ft Refrigerator**
(Item No. 5686031)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | $799.00 | $599.00 | "Save $200.00" |
| 4/25/24 – 5/01/24 | $799.00 | $599.00 | "Save $200.00" |
| 5/02/24 – 5/08/24 | $799.00 | $629.00 | "Save $170.00" |
| 5/09/24 – 5/15/24 | $799.00 | $599.00 | "Save $200.00" |
| 5/16/24 – 5/22/24 | $799.00 | $599.00 | "Save $200.00" |
| 5/23/24 – 5/29/24 | $799.00 | $599.00 | "Save $200.00" |
| 5/30/24 – 6/5/24 | $799.00 | $599.00 | "Save $200.00" |
| 6/06/24 – 6/10/24 | $799.00 | $599.00 | "Save $200.00" |
| 6/11/24 | $799.00 | $579.00 | "Save $222.00" |
| 6/12/24 – 7/10/24 | $799.00 | $599.00 | "Save $200.00" |
| 7/11/24 | $799.00 | $629.00 | "Save $170.00" |
| 7/12/24 – 7/21/24 | $799.00 | $629.00 | "Save $170.00" |

- 17 -

 **Figure 9:  Perpetual "Discounts" on Whirlpool Top-Load Washer**
(Item No. 782472)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 4/25/24 – 5/01/24 | ~~$699.00~~ | $518.00 | "Save $181.00" |
| 5/02/24 – 5/08/24 | ~~$699.00~~ | $518.00 | "Save $181.00" |
| 5/09/24 – 5/15/24 | ~~$699.00~~ | $518.00 | "Save $181.00" |
| 5/16/24 | ~~$699.00~~ | $448.00 | "Save $251.00" |
| 5/17/24 – 5/22/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 5/23/24 – 5/29/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 5/30/24 – 6/05/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 6/06/24 – 6/25/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 6/26/24 – 7/10/24 | ~~$699.00~~ | $448.00 | "Save $251.00" |
| 7/11/24 – 7/17/24 | ~~$699.00~~ | $499.00 | "Save $200.00" |
| 7/18/24 – 7/21/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |



**Figure 10:  Perpetual "Discounts" on Samsung Microwave**
(Item No. 5760681)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$459.00~~ | $329.00 | "Save $130.00" |
| 4/25/24 – 5/01/24 | ~~$459.00~~ | $329.00 | "Save $130.00" |
| 5/02/24 – 5/08/24 | ~~$459.00~~ | $329.00 | "Save $130.00" |
| 5/09/24 – 5/15/24 | ~~$459.00~~ | $329.00 | "Save $130.00" |
| 5/16/24 – 5/22/24 | ~~$459.00~~ | $299.00 | "Save $160.00" |
| 5/23/24 – 5/29/24 | ~~$459.00~~ | $299.00 | "Save $160.00" |
| 5/30/24 – 6/05/24 | ~~$459.00~~ | $299.00 | "Save $160.00" |
| 6/06/24 – 7/10/24 | ~~$459.00~~ | $299.00 | "Save $160.00" |
| 7/11/24 – 7/21/24 | ~~$459.00~~ | $332.00 | "Save $127.00" |

41.     Lowe's also prominently advertises continuous back-to-back "sales events" for its major appliances in its stores and on its website. The sales event advertisements typically state "xx% off select major appliances". In fact, the discounts apply to the overwhelming majority of the major appliances displayed in Lowe's retail stores. Meanwhile, Lowe's offers many more appliances on its website beyond just those displayed in its retail stores. The "sales event" discounts apply to the large majority the appliances on the Lowe's website, and to nearly all of the "Top Sellers" appliances on the website. In practice, if Lowe's advertises a discount for a major appliance, that appliance is <u>always</u> offered at a purported discount.

42.     For example, Lowe's advertised a limited-time "Up To 35% Off" sale on major appliances for the period September 26, 2024, through October 23, 2024, both in-store and online. See the photo and screenshot below at **Figure 11**.

**Figure 11: "Get Up to 35% Off" Sale Event on Major Appliances, 9/26/24 – 10/23/24**



- 20 -

43.     However, the advertised special sale event was phony; in fact Lowe's <u>always</u> offered its major appliances for at least 30% to 40% off, such that the advertised discounts were false.

44.     Below at **Figure 12** is a table showing how Lowe's advertised back-to-back appliances sales events for over six months straight, from April 4, 2024, to October 23, 2024. The data, like the other evidence presented in this Complaint, was collected as part of counsel's investigation of the Lowe's website and from visits to Lowe's stores. Consistent with Lowe's standard practice and policy, when one "sale" expired it was either extended or another similar sale immediately took its place.

**Figure 12:   Table Showing Perpetual Major Appliances Sales Events**

| <u>Sale Period</u> | <u>Advertised Sale Event Discount</u> | <u>Stated Sale End Date</u> |
|---|---|---|
| 1/04/24 – 1/24/24 | Up to 35% Off Select Major Appliances | "Offer ends 1/24/24" |
| 1/25/24 – 2/07/24 | Up to 35% Off Select Major Appliances | "Offer ends 2/07/24" |
| 2/08/24 – 2/28/24 | Up to 35% Off Select Major Appliances | "Offer ends 2/28/24" |
| 2/29/24 – 3/20/24 | Up to 35% Off Select Major Appliances | "Offer ends 3/20/24" |
| 3/21/24 – 4/03/24 | Up to 30% Off Select Major Appliances | "Offer ends 4/03/24" |
| 4/04/24 – 5/01/24 | Up to 35% Off Select Major Appliances | "Offer ends 5/01/24" |
| 5/02/24 – 5/15/24 | Up to 35% Off Select Major Appliances | "Offer ends 5/15/24" |
| 5/16/24 – 6/18/24 | Up to 35% Off Select Major Appliances | "Offer ends 6/18/24" |
| 6/19/24 – 7/10/24 | Up to 40% Off Select Major Appliances | "Offer ends 7/10/24" |
| 7/11/24 – 8/07/24 | Save On Select Major Appliances | "Offer ends 8/07/24" |
| 8/08/24 – 8/21/24 | Up to 35% Off Select Major Appliances | "Offer ends 8/21/24" |
| 8/22/24 – 9/11/24 | Up to 40% Off Select Major Appliances | "Offer ends 9/22/24" |
| 9/12/24 – 9/25/24 | Up to 35% Off Select Major Appliances | "Offer ends 9/25/24" |
| 9/26/24 – 10/23/24 | Up to 35% Off Select Major Appliances | "Offer ends 10/23/24" |

45.     Lowe's advertises the perpetual discounts and sales events on its major appliances in its stores, on its website homepage (see Figure 11 above), and on its major appliances category webpages. And as described above (see Figures 4 and 6), Lowe's advertises false reference

prices (the "WAS" strikethrough price) adjacent to false statements of savings ("SAVE $xx") and a false sale end date, in order to trick consumers into falsely believing that if they do not act now, they will miss out on a special limited-time "deal." As a result of Lowe's' fraud, customers pay more for the Products than they otherwise would have paid.

46.    In the online shopping cart, Lowe's advertises the strikethrough regular price, the dollar amount "savings," and the bogus sale "Ends" date. Lowe's also prefaces the strikethrough price with the word "Was" (e.g., "Was $559.00"), to further indicate that the higher strikethrough price was Lowe's previous and usual selling price for the Product. See the screenshots below.

**Lowe's Online Shopping Cart – 9/23/2024**



Zoom In of Pricing and Discount Representations (Including "Was" Price)

47.     However, all of these sale advertisements and promises of savings by Lowe's for its major appliances, like its advertisements for Bali and Levolor blinds and shades, were false. Lowe's never previously offered or sold the Products at the advertised reference price (i.e., the "Was" price). Likewise, Lowe's' advertisements that the discounts were for a limited time, and that they would end on a certain date, were false, because the Products were in fact perpetually on sale and Lowe's never offered the Products at the full price.

## V.     PLAINTIFFS' ALLEGATIONS ARE BASED ON THEIR COUNSEL'S COMPREHENSIVE INVESTIGATION INTO LOWE'S' PRACTICES

48.     Plaintiffs' allegations concerning Lowe's' false discount advertising are based in part on Plaintiffs' counsel's investigation of the Lowe's website using the Internet Archive's Wayback Machine (available at www.archive.org).[1] Plaintiffs' allegations are also based on daily screenshots and pricing data compiled from Plaintiffs' counsel's own scraping of the Lowe's website with a proprietary software program. Plaintiffs' counsel also investigated Lowe's' in-store practices by regularly visiting Lowe's retail stores, including in Oregon, California, and Washington.

49.     Counsel's investigation confirms that Lowe's' perpetual sales on the Products have persisted on the Lowe's website continuously since at least April 2021 (and likely earlier). Plaintiffs' counsel examined screenshots of over a hundred randomly selected days of the Lowe's website from the Internet Archive's Wayback Machine, going back to 2021. On every randomly selected day during this period, the Lowe's website displayed purportedly time-limited discounts for the Products. Likewise, counsel's analysis of the daily screenshots and pricing data compiled with counsel's proprietary software program shows that Lowe's' perpetual "sales" and false discounts continue to this day.

50.     Based on counsel's investigation, Lowe's offers and advertises its Products with identical reference prices and at substantially the same sale prices both on the Lowe's website

---

[1] The Internet Archive is an internet library that archives webpages. For more information: https://archive.org/about/.

and in its retail stores. Likewise, Lowe's advertised "sale events" and sale "end" dates for its major appliances and Bali and Levolor blinds and shades are substantially the same in-store and online.

51. Lowe's in-store advertised discounts, "xx% Off," "Was" reference prices, "Save" dollar amounts, sale prices, and "Offer ends" and "Valid thru" dates are identical in all of its retail stores throughout the country including its stores in Oregon.

52. Lowe's website advertised discounts, strikethrough reference prices, "Save" dollar amounts, sale prices, and sale ends dates (e.g., "Ends mm/dd") are presented identically to website visitors regardless of what state the visitor is from, including from Oregon (and meanwhile, these website prices and discounts are identical to Lowe's' in-store prices and discounts).

53. For example, below are photos of the identical Whirlpool 21.4-cu Side-by-Side Refrigerator (Item No. 912753) taken on the same day, January 29, 2025, in an Oregon retail store and in a California retail store by two different investigators hired by Plaintiffs' counsel, along with a screenshot taken from the Lowe's website of the same Whirlpool Refrigerator likewise taken on January 29, 2025. As the photos and screenshot reflect, in both these retail stores and online, Lowe's advertised the same false "SAVE $500," the same false "WAS" strikethrough reference price of $1,699, the same deceptive "SPECIAL VALUE" or "Now" discounted price of $1,199, and the same false "Valid thru" or "Ends" date of 1/29/2025.

- 24 -

**In-Store and Online Advertisements for Whirlpool Refrigerator on January 29, 2025** (Item No. 912753)

### Lowe's Website (1/29/2025)



### Lowe's Retail Store – Oregon (1/29/2025)



### Lowe's Retail Store – California (1/29/2025)



54.     In fact, Lowe's effectively treats its online and in-store sales channels as the same. Customers can make purchases through the Lowe's website and pick up the items in-store. Lowe's also encourages its customers, while shopping in-store, to view Lowe's' website and use Lowe's' smartphone app to view and learn more about the Products.

## VI.     LOWE'S' FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES OREGON LAW

55.     Decades of academic research has established that the use of reference prices and discount advertising like that utilized by Lowe's materially impacts consumers' behavior. A

- 25 -

reference price (e.g., the strikethrough "Was" reference price advertised by Lowe's from which the advertised discounts and savings are calculated) affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[2]

56.     When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as Lowe's, advertise their products with inflated false reference prices and false discounts. The false reference prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

57.     As a direct and proximate result of Lowe's' false reference prices and false discounts, Plaintiffs and Class members were harmed and lost money or property.

---

[2] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

58.     First, Plaintiffs and Class members were harmed because they would not have purchased the Products at the prices they paid had they known that the discounts were fake and that the Products had not in fact been regularly offered at the higher listed price. *See Clark v. Eddie Bauer LLC*, 371 Or. 177, 198–99, 532 P.3d 880, 893 (2023) ("[W]hen a person acts in response to the deception by spending money that the person would not otherwise have spent, the person has been injured to the extent of the purchase price as a result of that deception.").

59.     Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

60.     Additionally, just as Lowe's intended, Lowe's' false advertising of limited-time sales events (which were in fact perpetual) created a false sense of urgency, which made consumers more likely to make a purchase.

61.     Second, Plaintiffs and Class members were harmed because they did not receive the benefits of their bargain. Plaintiffs and Class members did not enjoy the actual discounts that Lowe's represented and promised to them. Plaintiffs and Class members did not receive Products that were worth the inflated amount that Lowe's represented to them. The Products did not regularly sell for, and did not have a market value of, the fictitious strikethrough reference price advertised by Lowe's.

62.     Third, Plaintiffs and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from Lowe's' deceptive pricing scheme. Lowe's' false discount advertising scheme artificially increases consumer demand for Lowe's' Products, which shifts the demand curve and allows Lowe's to charge more for its Products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations. Lowe's'

false advertising scheme enabled Lowe's to charge everyone more for all of the Products by artificially stimulating demand based on false pretenses. *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial"). Without the misrepresentations, Lowe's would have had to charge less for its Products in order to enjoy the same level of demand.

63.     In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets. A retailer's use of false reference prices constitutes an unfair method of competition and harms honest competitors that sell the same or similar products or otherwise compete in the same market, using valid and accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

64.     Courts have articulated the abuses that flow from false discount advertising practices. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

65.     Oregon law prohibits false discount practices such as those perpetrated by Lowe's. Oregon's Unlawful Trade Practices Act (UTPA) broadly prohibits: "Mak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." ORS 646.608(1)(j).

- 28 -

66.     Additionally, the UTPA prohibits sellers from using misleading price comparisons to advertise their products. ORS 646.608(ee) (citing ORS 646.883 and ORS 646.885). Specifically, the UTPA prohibits a seller from advertising a price comparison unless "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price." ORS 646.883(1); ORS 646.608(ee).

67.     The UTPA also prohibits price comparison advertising which uses terms such as "regular," "reduced," "sale," "originally," and "formerly" where the reference price was not in fact the retailer's own former price for the product. ORS 646.885(1); ORS 646.608(ee).

68.     The UTPA also prohibits price comparison advertising which uses terms such as "discount," "____ percent discount," "$____ discount," "____ percent off," and "$____ off" where the reference price was not in fact the retailer's own former price for the product. ORS 646.885(2); ORS 646.608(ee).

69.     In order for a reference price to be a lawful former price, it must be a price at which the seller, in the regular course of its business, made good-faith sales of the same or similar product or offered in good faith to make sales of the same or similar product within the preceding 30 days or on a date which is identified in the advertisement. OAR 137-020-0010(6)(a).

70.     Compliance with ORS 646.608(1)(j) and OAR 137-020-0010 "is established based on facts provable by the seller." ORS 646.883(2).

71.     As alleged in detail above, Lowe's advertised reference prices and discounts violate Oregon law because, based on the investigation of Plaintiffs' counsel, Lowe's advertised reference prices are inflated and fictitious, and Lowe's advertised percentage-off and dollars-off discounts are false. Lowe's reference prices and discounts are false because Lowe's advertises perpetual discounts off its Products, and thus rarely, if ever, offers its Products at their advertised strikethrough reference price.

72.     Also, as alleged in detail above, Lowe's uses misleading price comparisons. For example, Lowe's describes its strikethrough reference prices with the term "Was," which is

viewed under Oregon law and by reasonable consumers to refer to Lowe's' own former regular prices for those Products ("Was" is the equivalent of using the term "formerly"). However, these "Was" strikethrough reference prices are false because Lowe's in fact perpetually offers the Products at lower "discounted" prices.

73.     Additionally, as alleged in detail above, Lowe's uses terms such as "___% off," "discount," and "Save $___" even though the Products are not offered at a discount as compared to Lowe's' own former regular prices.

74.     The false reference price and false discount representations by Lowe's were material to the decisions of consumers to purchase each Product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant limited-time savings if they purchased these Products, and consumers purchased these Products on the basis of these representations in order to enjoy the purported discounts.

75.     Lowe's' false reference price and false discount representations are likely to mislead a reasonable consumer, and in fact did mislead Plaintiffs.

76.     Lowe's' marketing plan is to deceive its customers into believing that the Products are worth, and have a market value equal to, the inflated strikethrough reference price, and that the lower advertised sale price represents a special bargain.

77.     The false or misleading nature of Lowe's' reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all the circumstances would not have known or discovered their false or misleading nature.

78.     As a direct and proximate result of Lowe's' acts and omissions, all Oregon consumers who have purchased a Product from Lowe's that was advertised with a reference price or purported discount have been harmed and have lost money or property.

79.     Lowe's continues to advertise false reference prices and false discounts on the Products to this day. There is no reason to believe that Lowe's will voluntarily and permanently

cease its unlawful practices. Moreover, in the unlikely event that Lowe's were to cease its

unlawful practices, Lowe's can and is likely to re-commence these unlawful practices.

80.     In acting toward consumers and the general public in the manner alleged herein,

Lowe's acted with and was guilty of malice, fraud, and oppression and acted in a manner with a

strong and negative impact upon Plaintiffs, the Class, and the public.

## VII.     PLAINTIFFS' FACTUAL ALLEGATIONS

81.     Plaintiffs Lance Wright and Shauni Wright are married, and at all relevant times

have been, citizens and residents of the city of Coo Bay, in Coo County, Oregon.

82.     Mr. and Mrs. Wright are victims of Lowe's' false discount advertising scheme.

83.     As detailed above, Lowe's false discounting practices have been ongoing since at

least April 2021. During this time, Mr. and Mrs. Wright have purchased Products from Lowe's

which were advertised with false reference prices and false discounts.

84.     For example, on November 27, 2023, Mr. and Mrs. Wright visited the Lowe's

retail store located at 3300 NW Aviation Drive, Roseburg, Oregon 97470, to shop for a

dishwasher.

85.      While browsing the selection of dishwashers in the Lowe's store, Mr. and Mrs.

Wright viewed pricing and discount representations similar to those described in detail above

(e.g., see Paragraphs 29–30, 37, 42).

86.     For example, Mr. and Mrs. Wright viewed the price placard affixed to a

Whirlpool Eco Series Large Capacity 24-in Top Control Built-In Dishwasher With Third Rack

(Fingerprint Resistant Stainless Steel), 47-dBA Very Quiet Sound Level, Item No. 2593008

(the "Dishwasher"). The placard stated that the Dishwasher was currently on sale at a "SPECIAL

VALUE" of $579; that the Dishwasher "WAS $929"; and that the customer would "SAVE

$350" by buying the Dishwasher now. The placard also stated that this offer was only valid for a

limited time.

87.     Relying on Lowe's' representations, Mr. and Mrs. Wright reasonably believed

that the Dishwasher was normally offered and sold by Lowe's for the $929 "WAS" price. Mr.

and Mrs. Wright reasonably believed that the Dishwasher was thereby worth and had a market value of $929. Mr. and Mrs. Wright reasonably believed that the advertised "SPECIAL VALUE" sale price of $579 represented a special and unusual bargain, where Lowe's was temporarily offering the Dishwasher at $350 off (28% off) the regular and normal Lowe's selling price of $929. Relying on Lowe's' representations, Mr. and Mrs. Wright purchased the Dishwasher.

88.     However, Lowe's' pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Mr. and Mrs. Wright, the $929 "WAS" price was not Lowe's' regular selling price for the Dishwasher.

89.     Plaintiffs' counsel has collected pricing data for the Dishwasher purchased by Mr. and Mrs. Wright since April 21, 2024 through to the present day, and the data shows that Lowe's never offered the Dishwasher at the advertised ticketed "WAS" reference price during that time. Thus it is reasonable to infer for pleading purposes (and will be proven at trial after discovery) that Lowe's had likewise never offered the Dishwasher at the $929 "WAS" reference price for at least 30 days prior (indeed, given the findings of counsel's general investigation of the pervasiveness of Lowe's' scheme, not for at least several months prior) to Mr. and Mrs. Wright's purchase. The Dishwasher was not in fact worth the $929 price that Lowe's had led them to believe.

90.     Lowe's' advertised reference prices and discounts were material misrepresentations and inducements to Mr. and Mrs. Wright's purchases.

91.     Mr. and Mrs. Wright reasonably relied on Lowe's' material misrepresentations regarding the advertised reference prices and discounts. If Mr. and Mrs. Wright had known the truth, they would not have purchased the Products at the prices they paid.

92.     As a direct and proximate result of Lowe's' acts and omissions, Mr. and Mrs. Wright were harmed, suffered an injury-in-fact, and lost money or property.

93.     When Mr. and Mrs. Wright shopped at Lowe's, they had no suspicion that Lowe's' advertised reference prices and discounts were false. Lowe's gave Mr. and Mrs. Wright no reason to be suspicious. Mr. and Mrs. Wright first learned of Lowe's' false advertising

scheme in November 2024 when their attorneys told them about Lowe's' unlawful conduct and informed them that they were victims of the scheme. Prior to this, Mr. and Mrs. Wright did not know or suspect that Lowe's was engaging in a false discount advertising scheme or that they had been victims of the scheme.

94.     Mr. and Mrs. Wright have a legal right to rely now, and in the future, on the truthfulness and accuracy of Lowe's' representations regarding the advertised reference prices and discounts for its Products.

95.     Mr. and Mrs. Wright face an imminent threat of future harm. Mr. and Mrs. Wright would purchase Products from Lowe's again in the future if they could have confidence regarding the truth of Lowe's' price and discount representations. But without an injunction, Mr. and Mrs. Wright have no realistic way of knowing which, if any, of Lowe's reference prices, discounts, and sales for the Products are true.

96.     Mr. and Mrs. Wright will be harmed if, in the future, they are left to guess as to whether Lowe's is providing a legitimate sale or not, and whether its Products are actually worth the amount that Lowe's is representing.

97.     If Mr. and Mrs. Wright were to purchase Products again from Lowe's without Lowe's having changed its unlawful and deceptive conduct alleged herein, Mr. and Mrs. Wright would be harmed on an ongoing basis and/or would be harmed once or more in the future.

98.     The deceptive practices and policies alleged herein, and experienced directly by Mr. and Mrs. Wright, are not limited to any single Product. Rather, Lowe's' deceptive advertising and sales practices, which advertise and state false reference prices and false percentage-off and dollar-off discounts, were, and continue to be, systematic and pervasive across Lowe's' major appliances and Bali and Levolor blinds and shades.

- 33 -

## CLASS ALLEGATIONS

99.     Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

100.    **Class Definition:** Plaintiffs seek to represent the following Class:

> **All persons who, while in Oregon, within the applicable statute of limitations period, purchased from Lowe's one or more Products[3] advertised at a discount.**

101.    Specifically excluded from the Class are Lowe's and any entities in which Lowe's has a controlling interest, Lowe's' agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

102.    **Application of the Discovery Rule.** The applicable limitations period and corresponding class period extends back to the date on which Lowe's first engaged in its unlawful false discounting practices based on the discovery rule explicitly provided for in the UTPA. ORS 646.638(6). Based on counsel's investigation, Lowe's' false discount advertising practices have been ongoing since at least April 2021, and likely began much earlier. However, without discovery, Plaintiffs cannot determine what date, earlier than April 2021, that Lowe's first began advertising false discounts for the Products.

103.    "[A] cause of action does not accrue under the discovery rule until the claim has been discovered or, in the exercise of reasonable care, should have been discovered." *FDIC v. Smith* 328 Or. 420, 428, 980 P.2d 141 (1999); *see also Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278 (2011) ("The statute of limitations begins to run when the plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists."). Plaintiffs and the members of the Class did not know, and could not have reasonably known, about Lowe's' unlawful conduct.

---

[3] "Products" are defined in this Complaint as Bali and Levolor blinds and shades, and major appliances such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers.

104.    When Plaintiffs shopped at Lowe's, they had no suspicion that Lowe's' advertised reference prices and discounts were false. Lowe's gave Plaintiffs no reason to be suspicious. Plaintiffs first learned of Lowe's' false discount advertising scheme in November 2024 when their attorneys told them about Lowe's' unlawful conduct and informed them that they were victims of the scheme. Prior to this, Plaintiffs did not know or suspect—and had no reason to suspect—that Lowe's was engaging in a false discount advertising scheme or that they had been victims of the scheme.

105.    Likewise, Class members would not know or suspect that Lowe's was engaging in this deceptive pricing scheme. Reasonable consumers presume that retailers are not engaging in unlawful conduct. Reasonable consumers would believe that Lowe's' pricing and discount representations were true. Reasonable consumers would believe that Lowe's' strikethrough reference prices (1) represent Lowe's' regular and normal prices that consumers had to pay for the Products; (2) represent Lowe's' recent former prices of the Products (that is, the prices at which the Products were regularly offered for sale before the limited-time offer went into effect); and (3) represent the Lowe's prices that consumers will have to pay for the Products when the sale ends. Reasonable consumers would believe that Lowe's' advertised discounts represent a reduction from the regular and recent former prices of the Products in the amounts advertised.

106.    Moreover, Plaintiffs and the Class could not have, with the exercise of reasonable diligence, discovered Lowe's' false advertising scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover—especially regarding Products that are purchased infrequently such as major appliances and window blinds and shades.

107.    Consumers who shopped at Lowe's would have no way of knowing, with the exercise of reasonable diligence, the true daily price histories and past selling prices for the Products they viewed and purchased. Consumers would have no way to know, with the exercise of reasonable diligence, that the advertised Lowe's regular prices (i.e., the strikethrough reference prices) were fictitious and inflated and that the advertised percentage-off and dollars-off savings were false.

- 35 -

108. Plaintiffs' counsel only found evidence for Lowe's' deceptive pricing scheme by conducting an extensive and expensive investigation that no reasonable person would conduct.

109. **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises thousands of individuals. The exact number and identities of Class members are contained in Lowe's' records and can be easily ascertained from those records.

110. **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

      a. Whether the alleged conduct of Lowe's violates the Oregon Unlawful Trade Practices Act, ORS 646.605 *et seq.*;

      b. Whether Lowe's' alleged unlawful conduct pled herein were willful violations of ORS 646.608;

      c. Whether Lowe's engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which have been declared unlawful by ORS 646.608;

      d. Whether Plaintiffs and the Class have suffered ascertainable losses as a result of Lowe's' unlawful conduct;

      e. Whether Lowe's should be ordered to pay statutory damages to Plaintiffs and to each Class member; and

      f. Whether Lowe's should be enjoined from engaging in the unlawful conduct alleged herein.

111.    **Typicality.** Plaintiffs' claims are typical of Class members' claims. Plaintiffs and Class members all sustained injury as a direct result of Lowe's' standard practices and schemes, bring the same claims, and face the same potential defenses.

112.    **Adequacy.** Plaintiffs and their counsel will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests and are committed to representing the best interests of the Class members. Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

113.    **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Lowe's' conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial.

114.    By its conduct and omissions alleged herein, Lowe's has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

115.    Lowe's is primarily engaged in the business of selling goods. Each claim alleged by Plaintiffs arises out of a communication related to Lowe's' sale of goods.

## CAUSES OF ACTION

### COUNT I
**Violation of the Oregon Unlawful Trade Practices Act**
**Oregon Revised Statutes § 646.605 *et seq.***

116.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

117.    Each Plaintiff brings this claim in his or her individual capacity, in his or her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

118.    The Oregon Unfair Trade Practices Act (the "UTPA"), ORS 646.605 *et seq.*, is Oregon's principal consumer protection statute. As the Supreme Court of Oregon has explained:

> The civil action authorized by ORS 646.638 is designed to encourage private enforcement of the prescribed standards of trade and commerce in aid of the act's public policies as much as to provide relief to the injured party. This is apparent from the section itself. It allows recovery of actual damages or $200, whichever is greater, plus punitive damages, costs, and attorney fees. . . . The evident purpose is to encourage private actions when the financial injury is too small to justify the expense of an ordinary lawsuit . . . . the legislature was concerned as much with devising sanctions for the prescribed standards of trade and commerce as with remedying private losses, and that such losses therefore should be viewed broadly. The private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute.

*Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 134–36, 690 P.2d 488, 493–94 (1984).

119.    Under the UTPA, "a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater. The court or the jury may award punitive damages, and the court may provide any equitable relief the court considers necessary or proper." ORS 646.638(1). The court is also specifically authorized to order injunctive relief "as may be necessary to ensure cessation of unlawful trade practices." ORS 646.636.

- 38 -

120. The UTPA also permits a plaintiff to maintain a class action and recover the same remedies on behalf of each class member, including statutory damages. ORS 646.638(8)(a)-(c).

121. Lowe's is a "person," as defined by ORS 646.605(4).

122. Lowe's is engaged in "trade" and "commerce" in Oregon by advertising and offering for sale goods with reference prices and discounts to Oregon consumers on its website and in its stores that directly or indirectly affect the people of Oregon, as defined by ORS 646.605(8).

123. Lowe's' Products are "goods" that are or may be obtained primarily for personal, family or household purposes, as defined by ORS 646.605(6).

124. Plaintiffs and Class members purchased Lowe's' goods for personal, family, and/or household purposes.

125. The unlawful methods, acts and practices pled herein were committed in the course of Lowe's' business. ORS 646.608(1).

126. Lowe's' unlawful methods, acts and practices pled herein were "willful violations" of ORS 646.608 because Lowe's knew or should have known that its conduct was a violation, as defined by ORS 646.605(10).

127. Lowe's' representations of reference prices and discounts are "advertisements" as defined by ORS 646.881(1).

128. Lowe's' use of reference prices and advertised discounts are "price comparisons" as defined by ORS 646.881(2).

129. Lowe's' reference prices for its Products are representations of Lowe's' own "former prices," or in the case of labeled introductory advertisements are representations of Lowe's' "future prices," as defined by ORS 646.885.

130. By its conduct and omissions alleged herein, Lowe's has committed unlawful methods, acts or practices, including without limitation:

      a. Lowe's made false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions. ORS 646.608(1)(j);

- 39 -

b.     Lowe's advertised price comparisons that violate ORS 646.608(1)(j) by advertising reference prices that do not comply with one of the exceptions enumerated in OAR 137-020-0010(6)(a)-(g);

c.     Lowe's advertised former prices that were not prices at which Lowe's, in the regular course of its business, made good-faith sales of the same or similar products or offered in good faith to make sales of the same or similar products within the preceding 30 days or on a date which is identified in the advertisement. OAR 137-020-0010(6)(a); ORS 646.608(1)(j);

d.     Lowe's engaged in price comparison advertising in violation of ORS 646.883(2) by failing to comply with ORS 646.608(1)(j) and ORS 646.608(4). ORS 646.608(ee);

e.     Lowe's engaged in price comparison advertising in violation of ORS 646.885(1) by using terms such as "regular," "reduced," "sale," "usually," "originally," "clearance," "liquidation," and/or "formerly" where the reference price was not in fact Lowe's own former price, or in the case of introductory advertisements, was not Lowe's' future price. ORS 646.608(ee);

f.     Lowe's engaged in price comparison advertising in violation of ORS 646.885(2) by using terms such as "___ percent off," "$___ off," "___ percent discount" and/or "$___ discount" where the reference price was not in fact Lowe's' own former price, or in the case of introductory advertisements, was not Lowe's' future price. ORS 646.608(ee); and

g.     Lowe's engaged in other unfair or deceptive conduct in trade or commerce, as described herein. ORS 646.608(1)(u); ORS 646.608(4).

131.     Lowe's engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which have been declared unlawful by ORS 646.608.

132.     With respect to any omissions, Lowe's at all relevant times had a duty to disclose the information in question because, inter alia: (a) Lowe's had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Lowe's concealed material

- 40 -

information from Plaintiffs and Class members; and (c) Lowe's made partial representations, which were false and misleading absent the omitted information.

133.    Lowe's' misrepresentations and nondisclosures deceive and have a tendency to deceive a reasonable consumer and the general public.

134.    Lowe's' misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

135.    As a direct, substantial, and/or proximate result of Lowe's' unlawful conduct, Plaintiffs and Class members were harmed, suffered injury-in-fact, and suffered ascertainable losses of money or property.

136.    Plaintiffs and Class members reasonably relied on Lowe's' material misrepresentations, and would not have purchased Lowe's' Products at the prices that they paid had they known the truth.

137.    Plaintiffs and Class members did not receive the benefits of their bargain. Plaintiffs and class members did not enjoy the actual discounts that Lowe's represented and promised to them. Plaintiffs and Class members did not receive Products that were worth the inflated amount that Lowe's represented to them; the Products did not regularly sell for, and were not actually worth, the fictitious strikethrough reference price advertised by Lowe's. Additionally, Lowe's advertised limited-time discounts (e.g., "Valid thru" or "Ends" dates) for the Products were false and induced customers to purchase the Products immediately before they supposedly returned to the (fictitious) reference price.

138.    By its conduct and omissions alleged herein, Lowe's caused the demand for its Products to be artificially increased and caused all customers, including Plaintiffs and Class members, to pay price premiums to Lowe's. Put differently, as a result of its misrepresentations, Lowe's has been able to charge a price premium for its Products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Lowe's would have had to charge less for the Products in order to enjoy the same level of demand.

- 41 -

139. Plaintiffs seek for themselves and each member of the Class: (1) the greater of statutory damages of $200 or actual damages; (2) punitive damages; (3) appropriate equitable relief; and (4) attorneys' fees and costs. ORS 646.638(3); ORS 646.638(8).

140. **Permanent public injunctive relief.** Plaintiffs, acting as private attorneys general, seek public injunctive relief under the UTPA to protect the general public from Lowe's' false advertisements, misrepresentations, and omissions.

141. The UTPA specifically authorizes the court to order injunctive relief "as may be necessary to ensure cessation of unlawful trade practices." ORS 646.636.

142. When a consumer seeks to enjoin an unlawful trade practice that affects the general public, such as false advertising, courts refer to that type of injunctive relief as "public injunctive relief," and refer to the consumer as a "private attorney general." *See*, *e.g.*, *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 393 P.3d 85, 90 (2017) ("[P]ublic injunctive relief … is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public."); *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 988 P.2d 67, 74 (1999) (referring to consumers seeking public injunctive relief as "private attorneys general"); *Scott v. Cingular Wireless*, 160 Wash. 2d 843, 161 P.3d 1000, 1006 (2007) ("Private citizens act as private attorneys general in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce. Consumers bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests."); *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021) (explaining that the "paradigmatic example" of public injunctive relief is "an injunction against the use of false advertising"); *Snarr v. HRB Tax Grp., Inc.*, 839 F. App'x 53, 55 (9th Cir. 2020) (explaining that "relief which enjoins deceptive practices directed at the public is public injunctive relief").

143. Lowe's' misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of

- 42 -

repetition or re-occurrence by Lowe's absent a permanent public injunction. Accordingly, Plaintiffs seek an order enjoining Lowe's from committing the unlawful practices alleged herein.

144.     The balance of the equities favors the entry of permanent public injunctive relief against Lowe's. Plaintiffs, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Lowe's' ongoing false advertising absent the entry of permanent public injunctive relief against Lowe's.

145.     Plaintiffs lack an adequate remedy at law to prevent Lowe's from engaging in the unlawful practices alleged herein. Plaintiffs would shop for Products at Lowe's again if they could have confidence regarding the truth of Lowe's' prices and the value of its Products. Plaintiffs will be harmed if, in the future, they are left to guess as to whether Lowe's is providing a legitimate sale or not, and whether Lowe's' Products are actually worth the amount that Lowe's is representing.

146.     Also, monetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages will not prevent Lowe's from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what Product(s) Plaintiff may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by Lowe's.

- 43 -

# PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the proposed Class, request that the Court order relief and enter judgment against Lowe's as follows:

1. Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiffs and their counsel to represent the Class;

2. Declare that the discovery rule, pursuant to, without limitation, ORS 646.638(6), applies to extend any applicable limitations period and the corresponding class period back to the date Lowe's first engaged in the unlawful conduct alleged herein (which based on counsel's investigation, is at least April 2021 and is likely earlier);

3. Declare that Lowe's' conduct alleged herein violates the UTPA;

4. Order Lowe's to pay statutory damages of $200 or actual damages, whichever is greater, to Plaintiffs and each of the Class members;

5. Order Lowe's to pay punitive damages to Plaintiffs and each of the Class members in an amount to be determined at trial;

6. Permanently enjoin Lowe's from engaging in the unlawful conduct alleged herein;

7. Order that Lowe's maintain the following records for each daily Product[4] offering in its retail stores and on its website for at least two years from the date of each advertisement and/or offer for sale of the Product, for auditing purposes to ensure compliance with the ordered injunctive relief: (1) the advertised reference price for each Product; (2) the offer price and/or net selling price of each Product; and (3) any discount percentage and/or any other discount that was advertised and/or applicable to each Product;

8. Retain jurisdiction to monitor Lowe's' compliance with the permanent injunctive relief;

---

[4] "Products" are defined in this Complaint as Bali and Levolor blinds and shades, and major appliances such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers.

9.      Order any other equitable relief the Court deems appropriate;

10.     Order Lowe's to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

11.     Grant such other relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted on February 28, 2025, by:

HATTIS & LUKACS

Daniel M. Hattis (*admitted pro hac vice*)
dan@hattislaw.com
Paul Karl Lukacs (*admitted pro hac vice*)
pkl@hattislaw.com
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: (425) 233.8650
Fax: (425) 412.7171

WEAVER BENNETT & BLAND, P.A.
Michael David Bland, NC Bar No. 008179
dbland@wbbatty.com
David B. Sherman Jr., NC Bar No. 47153
dsherman@wbbatty.com
196 North Trade Street
Matthews, North Carolina 28106
Tel: (704) 844-1400
Fax: (704) 845-1503

SIGMON, CLARK, MACKIE, HANVEY &
FERRELL, P.A.
Andrew J. Howell, NC Bar No. 42921
andy.howell@sigmonclark.com
R. Jason White, NC Bar No. 31860
jason.white@sigmonclark.com
Post Office Drawer 1470
Hickory, North Carolina 28603
Tel: (828) 328-2596
Fax: (828) 328-6876

*Attorneys for Plaintiffs and the Proposed Class*

- 45 -