IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| SHAUNI WRIGHT AND LANCE WRIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC,<br><br>Defendant. | CIV. NO. 5:24-CV-00237-KDB-DCK |
| PRESCILA LOVELL,<br><br>Plaintiff,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC,<br><br>Defendant. | CIV. NO. 5:24-CV-00238-KDB-DCK |

**MEMORANDUM AND ORDER**

**THIS MATTER** is before the Court on Defendant's Motions to Dismiss Plaintiffs' First Amended Complaints in two nearly identical actions involving the same counsel, *Wright v. Lowe's Home Centers, LLC*, 5:24-cv-00237-KDB-DCK (Doc. No. 30) and *Lovell v. Lowe's Home Centers, LLC*, 5:24-cv-00238-KDB-SCR (Doc. No. 24). In those Amended Complaints, Plaintiffs

1

claim that Lowe's Home Centers, LLC ("Lowe's") violated Oregon and California unfair trade practices statutes through an alleged "false discount advertising scheme" in which discounts are advertised in relation to Lowe's "strikethrough reference prices," which, according to Plaintiffs, are "false" because Lowe's "rarely, if ever, offers [two brands of blinds and shades and numerous major appliances] at their advertised reference price." The *Wright* Plaintiffs (husband and wife) purchased a dishwasher in November 2023, in an Oregon Lowe's retail store. Plaintiff Lovell purchased a wall oven in June 2024, in a California Lowe's retail store. However, each of the Plaintiffs broadly seek to represent a class of all persons in their respective states that purchased any of a dozen or more different products "advertised at a discount," whether in retail stores or through Lowe's website. Based on those expansive class allegations, the asserted grounds for the Court's jurisdiction in both cases is 28 U.S.C. § 1332(d)(2), which requires, *inter alia*, a class action in which the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.

Federal courts are courts of limited jurisdiction, and Plaintiffs must first establish standing to assert each of their claims. *See Hensley v. City of Charlotte*, No. 21-2308, 2023 WL 1990298, at *2 (4th Cir. Feb. 14, 2023) ("A federal court's subject matter jurisdiction is a threshold question that always must be addressed before passing on the merits of a case, even where the merits question is more straightforward."). Standing requires a personal injury and concrete harm "fairly traceable to the challenged conduct of the defendant." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). As discussed further below, the Plaintiffs lack standing to assert the claims of the general purchasing public who may (or may not) have been misled into a purchase from Lowe's based on its alleged false advertising. *See TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) (speculative harm as to other class members is insufficient to establish standing).

Therefore, even accepting for purposes of this Order that Plaintiffs have stated a claim for relief as to their own purchases, limiting Plaintiffs' claims to their own purchases makes clear that Plaintiffs cannot establish the jurisdictional amount in controversy under 28 U.S.C. § 1332(d)(2), on which Plaintiffs base their claim for federal jurisdiction. Accordingly, the Court will **GRANT** the Motions to Dismiss on the grounds that this Court lacks subject matter jurisdiction over this action.

## I. LEGAL STANDARD[1]

"[F]ederal courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998) (citation omitted); *see Gunn v. Minton*, 568 U.S. 251, 256 (2013). There is no presumption that a federal court has subject-matter jurisdiction. *See Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). And the potential absence of subject matter jurisdiction is an issue which can (and indeed must) be raised *sua sponte* by the Court if that question arises. *See* Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) ("[t]he objection that a federal court lacks subject-matter jurisdiction [ ] may be raised by a party, or by a court on its own initiative, at any stage in the litigation"). A court cannot exercise subject-matter jurisdiction "over an individual who does not have standing." *Whipple v. Marcuse*, No. 3:24-CV-00325, 2024 WL 3761276, at *1 (W.D.N.C. Aug. 12, 2024) (quoting *AtlantiGas Corp. v. Columbia Gas Transmission Corp.*, 210 F. App'x 244, 247 (4th Cir. 2006)).

---

[1] Because the Court does not reach the merits of Defendant's Rule 12(b)(6) motion, it need not discuss the legal standards applicable to that rule.

The principle of standing originates from Article III of the United States Constitution, which "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *See TransUnion,* 594 U.S. at 423 (quoting U.S. CONST. art. III, § 2). The standing inquiry asks, "whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984). And, as stated in *TransUnion*, "to demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: 'What's it to you?'" *TransUnion,* 594 U.S. at 423 (quoting Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983).

The doctrine consists of both constitutional requirements and "prudential principles." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979). The "'irreducible constitutional minimum' of standing consists of three elements. A plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992); *Spokeo,* 578 U.S. at 338. Plaintiffs bear the burden of proving that subject matter jurisdiction exists and, therefore, their standing. *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

## II. FACTS AND PROCEDURAL HISTORY

Because of the nature of this Order focusing on the threshold question of standing, the Court will only summarize Plaintiffs' factual allegations. In these putative class actions, Plaintiffs allege that Lowe's engages in a "scheme" of "false discount advertising," which Plaintiffs define as the advertising of products for sale at a "discount" that does not accurately reflect a significant (or any) savings from their previous or regular prices. *See Lovell*, Doc. No. 25 at 1-2. Specifically, Plaintiffs allege that Lowe's advertises "strikethrough reference prices" for various products

prefaced by the word "Was" (*e.g.*, "WAS $1200.99") then calculates the amount of the discount off of that price. *See Lovell*, First Amended Complaint ("FAC"), Doc. No. 21 at ¶¶ 2-3. Plaintiffs claim that the products at issue are "Bali and Levolor branded blinds and shades, and major appliances, e.g., refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers and dryers." *Id*. at ¶ 1. Plaintiffs allege that the "reference prices" are false because Lowe's "advertises perpetual discounts off the Products, and thus rarely if ever offers the Products at their advertised reference price." *Id*. at ¶ 4. According to Plaintiffs, Lowe's pricing is intended to "trick consumers" into believing that its Products are worth, and have a market value equal to, the inflated reference price and that the lower advertised sale price represents a special bargain. *Id*. at ¶ 6.

Each of the Plaintiffs alleges that they were "tricked" into purchasing an appliance from Lowe's. *See Wright*, First Amended Complaint, Doc. No. 25 at ¶¶ 81–89; *Lovell* FAC at ¶¶ 80–91. The Wrights allege that on November 27, 2023, they visited the Lowe's store in Roseburg, Oregon to shop for a dishwasher. On a "Whirlpool Eco Series Large Capacity 24-in Top Control Built-In Dishwasher" (the "Dishwasher"), they saw a sign stating that the dishwasher was offered for sale at a "SPECIAL VALUE" of $579; that the Dishwasher "WAS $929"; and that a customer would "SAVE $350" by buying the Dishwasher. *Wright* FAC at ¶¶ 84–86. Allegedly relying on Lowe's representations, the Wright Plaintiffs purchased the Dishwasher (although the FAC does not allege the purchase price). *Id*. at ¶ 87. The Wrights allege that the $929 "WAS" price was not Lowe's regular selling price for the Dishwasher, and that Lowe's had "never offered the Dishwasher at the $929 "WAS" reference price for at least 30 days prior to Plaintiffs' purchase (which the Wrights infer from information related to the dishwasher's advertised price months later). *Id*. at ¶ ¶ 88–89. Finally, the Wright Plaintiffs allege that had they known the true price history of the Dishwasher, that they would not have bought it at the (unstated) price they paid. *Id*.

5

at ¶ 91. They do not allege that the product was misrepresented, the offered price for the Dishwasher was itself unfair or that the Dishwasher was available at a lower price elsewhere.

With respect to Plaintiff Lovell, she alleges that she visited a Lowe's store in Folsom, California on June 19, 2024, to shop for a microwave wall oven combo and saw a price placard on a Frigidaire Gallery 27-in Microwave Wall Oven Combo (the "Wall Oven"). *Lovell* FAC at ¶¶ 83–85. The sign stated that the Wall Oven was offered for sale at a "SPECIAL VALUE" of $2899; that the Dishwasher "WAS $3899"; and that the customer would "SAVE $1000" by buying the oven. *Id*. at ¶ 85. Allegedly relying on Lowe's representations, Plaintiff Lovell purchased the Wall Oven. *Id*. at ¶ 86. Lovell alleges that at least since April 1, 2024, Lowe's had not offered the Wall Oven at the referenced price and did not offer the oven at the "reference" price up through the date of the Amended Complaint. *Id*. at ¶ 87. Like the *Wright* Plaintiffs, Ms. Lovell alleges that had she known the true pricing history of the Wall Oven, she would not have purchased the product at the (again unstated) price that she paid. *Id*. at ¶ 90. Also similarly to *Wright*, she does not allege that the offered price for the Wall Oven was itself unfair or that the Wall Oven was available at a lower price elsewhere.

For their statutory claims, the *Wright* Plaintiffs allege a single claim for violation of the Oregon Unfair Trade Practices Act ("UTPA"), ORS 646.605 et seq., *see Wright* FAC at ¶¶ 116–46, and Plaintiff Lovell alleges claims for violation of California's Consumers Legal Remedies Act (CLRA), California Civil Code § 1750 et seq.; False Advertising Law (FAL), California Business & Professions Code § 17500 et seq.; and Unfair Competition Law (UCL), California Business & Professions Code § 17200 et seq. *See Lovell* FAC at ¶¶ 115–179. All Plaintiffs allege their claims in their personal capacities and also as putative representatives of a Class. They propose the following broad Class definition:

> "All persons who, while in [Oregon] / [California], within the applicable statute of limitations period, purchased from Lowe's one or more Products[2] advertised at a discount."

*See Wright* FAC at ¶ 100; *Lovell* FAC at ¶ 99. All Plaintiffs seek actual damages, punitive damages, a permanent injunction, attorneys fees, interest and costs for themselves and for each Class member.

The Motions to Dismiss are fully briefed and ripe for the Court's ruling.

### III.     DISCUSSION

"A court is to presume … that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Sikes v. Sree Hotels, LLC*, No. 3:24-CV-00679-KDB-DCK, 2024 WL 5130865, at *3–4 (W.D.N.C. Dec. 16, 2024). Indeed, district courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh*, 546 U.S. at 501; *accord Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *see McCulloch v. Vélez*, 364 F.3d 1, 5 (1st Cir. 2004) ("It is blackletter law that a federal court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction.").

A district court has subject matter jurisdiction over a case only where the matter involves a federal question arising "under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331, or if, as alleged here, the Court has "diversity jurisdiction" under 28 U.S.C. § 1332. More specifically, Plaintiffs allege this Court has jurisdiction under 28 U.S.C. § 1332(d) because this is

---

[2] "Products" are defined in the context of the proposed Class definition as "Bali and Levolor blinds and shades, and major appliances such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers."

a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs and at least one class member is a citizen of a state different from Defendant. *See* 28 U.S.C. § 1332(d) (Diversity jurisdiction provision added by the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. No. 109–2, 119 Stat. 4). The claims of individual class members are aggregated to determine whether the jurisdictional threshold has been met. *See* 28 U.S.C. § 1332(d)(6).

When a plaintiff invokes a federal court's diversity jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith. See, *e.g., Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 276 (1977) ("'[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith.'"). However, "where a defendant or the court challenges the plaintiff's allegations regarding the amount in question, the plaintiff who seeks the assistance of the federal courts must produce sufficient evidence to justify its claims." *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995); *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). If there is doubt "regarding a defendant's asserted amount in controversy, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 192 (4th Cir. 2017) (quoting *Dart Cherokee*, 574 U.S. at 88).

To identify the amount in controversy, a defendant may "rely to some extent on reasonable estimates, inferences, and deductions." *Id.* at 196. The question is "not what the plaintiff will actually recover," but rather "the amount that will be put at issue in the course of the litigation"—that is, whether "'a fact finder might legally conclude that' damages will exceed the jurisdictional amount." *Id.* However, "[t]o meet its burden, [a defendant] must provide enough facts to allow a

8

court to determine—not speculate—that it is more likely than not that the class action belongs in federal court." *Id.* at 197; *see also Brennan v. Stevenson*, No. JKB-15-2931, 2015 WL 7454109, at *6 (D. Md. Nov. 24, 2015) ("Courts may not engage in conjecture, speculation, or judicial star gazing to determine jurisdiction."); *Osia v. Rent-a-Center, Inc.*, No. DKC-15-1200, 2015 WL 3932416, at *5 (D. Md. June 25, 2015) ("To allow removal of this case based on Defendant's speculation as to a possible final damage award would eviscerate the amount in controversy requirement."); *Ayers v. CIOX Health, LLC*, No. CV DLB-23-3079, 2024 WL 2783787, at *2 (D. Md. May 29, 2024) (declining CAFA jurisdiction where Plaintiff's evidence of the amount in controversy was too speculative).

In "aggregating" the amount in controversy in a putative class action there are two elements – the number of Class members and the amount of alleged damages suffered by each member. The Court's focus here is on the number of Class members – and, more specifically, the number of Class members with standing to assert the Plaintiffs' claims.[3] And, with respect to standing, the question is how many putative Class members suffered a concrete injury in fact. Without one, they can't pursue claims in federal court. *See TransUnion*, 594 U.S. at 417. ("No concrete harm, no standing.").

*TransUnion v. Ramirez* governs this Court's consideration of how to apply "the Article III requirement that the plaintiff's injury in fact be concrete" in the context of a class action. In

---

[3] While there are no specific allegations as to the amount of harm for various proposed Class members (beyond the conclusory allegation of more than $5,000,000 collectively), the Court will assume (only for purposes of this preliminary analysis) that if the number of qualified Class members in each action is in the "thousands" as alleged by Plaintiffs then the aggregate amount would exceed $5,000,000. However, the Court does not reach the substantial question of whether Class members who, of course, received and have used the Products they purchased could, as a matter of law, recover the entire amount of their purchases, which might significantly affect the average amount in controversy for each Class member.

9

*TransUnion*, the named plaintiff brought a class action, alleging that TransUnion, a credit reporting agency, had violated the Fair Credit Reporting Act by failing to use reasonable procedures before placing a misleading alert in his credit file that labeled him as a potential terrorist, drug trafficker, or serious criminal and sending him mailings with formatting errors. *Id.* at 419–21. The district court certified a class of more than 8,000 people who had the same misleading alert added to their credit files and had also received similar mailings. A jury then awarded each class member statutory and punitive damages.

The Supreme Court reversed the awards, holding that only class members whose credit reports had been provided to third-party businesses had suffered sufficient "concrete harm" to support standing. *Id.* at 417. The Court rejected the argument that the other class members had "suffered a concrete injury for Article III purposes because the existence of misleading ... alerts in their internal credit files exposed them to a material risk that the information would be disseminated in the future to third parties and thereby cause them harm." *Id.* at 435. With respect to the claims based on the formatting errors, only the named plaintiff had demonstrated any concrete harm, precluding the remainder of the putative class from establishing standing to recover on those claims. *Id.* at 418. The Court concluded that none of the other class members had "demonstrated that the format of TransUnion's mailings" — even if not in compliance with the statute — caused them "any harm *at all.*" *Id.* at 440 (emphasis in original).

In its opinion, the Supreme Court explained that while "[t]he most obvious" concrete injuries are "tangible harms, such as physical harms and monetary harms," "[v]arious intangible harms can also be concrete," depending on whether they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425. Then, most important here, the Court applied those principles to class actions, observing that "standing

is not dispensed in gross." *Id.* at 431. It stated that federal courts lack "the power to order relief to any uninjured plaintiff, class action or not," *id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring)), and that, as a result, "[e]very class member must have Article III standing in order to recover individual damages," *id.* Moreover, "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.*

Therefore, following *TransUnion*, it is clear that to recover damages from the defendants, "[e]very class member must have Article III standing" "for each claim that they press,"[4] requiring proof that the challenged conduct caused each of them a concrete harm. 594 U.S. at 431. It is equally clear that, to establish their standing to recover damages, the plaintiffs cannot rely on a "mere risk of future harm." *Id.* at 437. That is, *TransUnion* requires a sufficient factual showing for each class member to claim damages. *See id.* at 431 (explaining that standing must be demonstrated for every class member with "specific facts").

Consistent with *TransUnion*, the Fourth Circuit has concluded that the "intangible harm" of enduring a statutory violation, standing alone, typically won't suffice under Article III—unless there's separate harm (or a materially increased risk of another harm) associated with the violation. *See O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 242–43 (4th Cir. 2023) (citing *Spokeo,* 578 U.S. at 342 (no standing based on "bare procedural violation" of the Fair Credit Reporting Act)); *see also Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 254 (4th Cir. 2020) (being "deprived of impartial and fair competition between settlement services providers," in violation of the Real Estate Settlement Procedures Act, isn't a concrete injury when it didn't increase plaintiffs' costs); *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 347 (4th Cir. 2017) (alleged informational injury

---

[4] The Court need not and does not decide Lowe's specific challenge to Plaintiffs' standing with respect to seeking permanent injunctive relief.

11

from the violation of a Fair Credit Reporting Act provision wasn't a concrete injury when the plaintiff didn't allege how the violation adversely affected him). In other words, as noted in *O'Leary*, "under Article III, an injury in law is not an injury in fact." *O'Leary*, 60 F.4th at 242–43 (quoting *TransUnion*, 594 U.S. at 427).[5]

Turning to the specifics of these cases, the Court finds that Plaintiffs cannot establish that they have standing to assert the claims of other Lowe's customers who voluntarily bought other products or that those customers themselves have standing sufficient for the Court to aggregate the amount of their purchases to reach the jurisdictional amount. *See Kisting v. Gregg Appliances, Inc.*, No. 16-CV-141, 2016 WL 5875007, at *3 (E.D. Wis. Oct. 7, 2016) (agreeing with a list of cited cases holding that an individual does not have standing to brings claims for products he did not purchase); *Lewis v. Casey*, 518 U.S. 343 (1996) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"); *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) ("This is not a case where the named plaintiff is trying to piggy-back on the injuries of the unnamed class members. That, of course, would be impermissible …").

---

[5] Moreover, in *O'Leary*, the Court held that the same principles (i.e., that a mere statutory violation typically won't suffice as an Article III injury) apply whether the alleged statutory violation is under federal or state law. *See O'Leary*, 60 F.4th at 243 ("It would be an anomaly if a state legislature could grant plaintiff the keys to federal court based on a mere statutory violation when Congress can't.").

12

While Plaintiffs can allege their own reaction to Lowe's pricing information (i.e., that they were "tricked" into buying a product they wouldn't otherwise have purchased),[6] they can only speculate as to the individual buying decisions of "thousands" of other customers with respect to products as diverse as microwaves, washing machines and window shades. Indeed, other customers may have not seen or paid much attention to the "discount" information;[7] independently investigated the products to know their price history;[8] not cared about earlier prices because they were pleased with the price offered; compared prices against other stores and believed they were getting a good price on that basis; or experienced any of a myriad of other scenarios that don't involve the alleged monetary harm of purchasing a product that the customer would not have otherwise purchased.[9]

Again, merely an allegation of exposure to an alleged statutory violation, without more, does not create standing. *See O'Leary*, 60 F.4th at 242–43. Like the mistaken credit alert in

---

[6] Significantly, Plaintiffs have not alleged the products they bought were misrepresented, the offered price was not honored, there was a "bait and switch," etc. *See, e.g.*, *Hill v. AQ Textiles LLC*, 582 F. Supp. 3d 297, 311 (M.D.N.C. 2022) (standing to assert class claims found where plaintiffs alleged that sheets were advertised at higher thread counts than the sheets actually possessed).

[7] *See, e.g., Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253, at *5 (N.D. Cal. Sept. 19, 2013) (dismissing California UCL claim for lack of Article III and statutory standing, where plaintiff failed to allege actual reliance and that they suffered economic injury as a result); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005), *aff'd* 252 F. App'x 777 (9th Cir. 2007) (dismissing UCL claim where "none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements").

[8] A customer may have asked a Lowe's employee for more information or simply asked an AI chatbot on their mobile phone if they were getting a good deal. In fact, Plaintiffs' Amended Complaints disclose that their counsel primarily used a publicly available Internet Archive Wayback Machine (available at www.archive.org) to search for prior prices. *See, e.g., Wright*, Doc. No. 25 at ¶ 48.

[9] To be clear, the Court does not intend to promote or condone dishonesty in commercial communications, and the lawfulness of the widespread use of "reference pricing" of dubious provenance is not decided here. Rather, the Court's focus is, as it must be, on the threshold issue of its jurisdiction to hear the merits of the Parties' disputes.

13

*TransUnion*, the mere speculative possibility of harm to a putative class member arising from an allegedly false advertisement is insufficient to establish the "concrete injury" required to maintain standing. Plaintiffs cite a number of articles in the economic literature to the effect that consumers seek "deals" and may be positively affected (in economic terms, gain "utility") by the perception of getting a "deal" or "discount." *See Wright*, Doc. No. 25 at n.2.[10] However, even accepting that economic premise, it does not follow as a legal matter that the other putative Class members have suffered a concrete harm in the absence of their individual allegation (on which these Plaintiffs can only improperly speculate) that they would not have purchased the product if they had known its true pricing history. In other words, other customers may well be disappointed to find out that they didn't get a "deal" - which is not itself a concrete injury[11] - but still satisfied with buying the product at the offered price, given their needs, resources and the available alternatives.

Having determined that Plaintiffs cannot aggregate the alleged losses of other Lowe's customers for want of standing, it is clear that Plaintiffs cannot meet the jurisdictional amount in controversy of $5,000,000 required under 28 U.S.C. § 1332(d)(2). In the absence of federal jurisdiction, the Court must dismiss this action under Rule 12(h)(3) for lack of subject matter jurisdiction.

---

[10] Notably, the lead article cited by Plaintiffs does not endorse litigation as a cure for the practice of "fictitious pricing." *See* Richard Staelin, Joel E. Urbany & Donald Ngwe, Competition and the Regulation of Fictitious Pricing, 87 J. of Mktg. 826, 836 (2023) (stating that the "ineffectiveness and cost of litigation make it a poor candidate for addressing fictitious pricing" and advocating for a *legislative/regulatory* solution requiring the disclosure of recent average pricing when "reference" pricing is used to market products).

[11] "Emotional upset" is itself insufficient to support standing, even in circumstances far more intrusive than here, such as a data breach. *See Panighetti v. Intelligent Bus. Sols., Inc.*, No. 1:23CV209, 2025 WL 1796454, at *4 (M.D.N.C. June 30, 2025) (discussing Fourth Circuit authority).

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motions to Dismiss in *Wright v. Lowe's Home Centers, LLC*, 5:24-cv-00237-KDB-DCK (Doc. No. 30) and *Lovell v. Lowe's Home Centers, LLC*, 5:24-cv-00238-KDB-SCR (Doc. No. 24) are **GRANTED** based on the Court's determination that it lacks subject matter jurisdiction over these actions;[12] and

2. The Clerk is directed to close these matters in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: September 15, 2025

Kenneth D. Bell
United States District Judge

---

[12] The Court does not reach the merits of Plaintiffs' claims or Defendant's arguments other than as discussed in this Order.